```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
LAUREN MIRANDA,                                             :
                                                            :
                              Plaintiff,                    :   MEMORANDUM
                                                            :   DECISION AND ORDER
                - against -                                 :
                                                            :   20-cv-104 (BMC)
SOUTH COUNTRY CENTRAL SCHOOL                                :
DISTRICT, JOSEPH GIANI, NELSON                              :
BRIGGS, TIM HOGAN, ERIKA DELLA                              :
ROSA, CHERYL A. FELICE, REGINA HUNT,                        :
LISA DI SANTO, ANTHONY GRIFFIN,                             :
CAROL MALIN, JACK NIX, CHRIS PICINI,                        :
and CHRISTINE FLYNN,                                        :
                                                            :
                              Defendants.                   :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

The question raised in this action is whether a female public-school teacher can be fired because a semi-nude picture of her became available to her employer, the school district. Presently before me is defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion is granted in part and denied in part.

## BACKGROUND

Until the termination of her employment on April 26, 2019, plaintiff was a probationary middle school teacher for the South Country Central School District, a public education provider. In January 2019, defendants came into possession of a semi-nude photo of plaintiff. The photograph was a selfie that plaintiff had taken on her cellphone and sent to a former boyfriend, a male teacher in defendants' school district who she had been dating. The photograph depicted plaintiff's face and uncovered breasts. When questioned by school officials, she admitted that

she had taken the picture several years ago, and that her former boyfriend was the only person to whom she had sent it. Defendants told plaintiff that they believed her when she denied sending the photo to any students and there was nothing suggesting that she had sent the photo to anyone else but her former boyfriend. Nevertheless, plaintiff was immediately suspended from teaching and directed to remain at home while the school district investigated. On January 31, 2019, defendants notified plaintiff that she was being discharged because of the photo depicting her as a "topless female." In addition, defendant Joseph Giani, the school district's Superintendent, commented to plaintiff that she would have received tenure, but that she had to be terminated due to the image portraying her "female breasts." The male teacher involved was never disciplined. Plaintiff claims that the "true reason for the adverse employment action was unlawful discrimination" because of her gender. The complaint contains seven claims for relief. The first is under Title IX, Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, for gender discrimination. The second claim is under 42 U.S.C. § 1983 for the deprivation of plaintiff's unspecified "civil rights". The third alleges a Fourteenth Amendment Equal Protection violation under two theories: gender discrimination in public employment and a "class-of-one" theory. The fourth and fifth raise similar allegations of gender discrimination under New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, respectively. The sixth claim alleges a conspiracy under 42 U.S.C. § 1985(3) to violate plaintiff's civil rights. The seventh claim is under 42 U.S.C. § 1988 for attorney's fees.[1]

---

[1] Plaintiff has abandoned her claims against the individual defendants under Title VII and Title IX by not referencing them in her opposition to defendants' motion. See Laface v. E. Suffolk Boces, 349 F. Supp. 3d 126, 161 (E.D.N.Y. 2018) (collecting cases). In any event, there is no individual liability under those statutes. See Lore v. City of Syracuse, 670 F.3d 127, 169 (2d Cir. 2012) (Title VII); Doe v. Haas, 427 F. Supp. 3d 336, 355 (E.D.N.Y. 2019) (Title IX).

## DISCUSSION

I.  **Federal Claims**

   A.  **Standard of Review**

When determining the complaint's sufficiency, the Court assumes a plaintiff's well-pleaded factual allegations to be true and draws all reasonable inferences in the plaintiff's favor. Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 113 (2d Cir. 2013). The Court remains mindful however that a plaintiff is required to plead enough facts "to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Reciting bare legal conclusions is insufficient, and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

   B.  **Lack of Comparators**

Defendants first contend dismissal is warranted because plaintiff failed to point to specific comparators in her complaint, by which I suppose they mean male teachers who were not fired for taking a shirtless photograph. However, the Second Circuit has noted that an inference of discrimination may be drawn either from (1) direct evidence of discriminatory intent, or (2) a showing by plaintiff that "[she] was subjected to disparate treatment … [compared to persons] similarly situated in all material respects to herself." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (internal quotations and citations omitted). In other words, a showing of disparate treatment through comparators, while a common method of

establishing an inference of discriminatory intent, is only one way to discharge that burden. See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001).

Comments overtly suggesting bias against female employees by individuals involved in the decision to terminate a plaintiff may satisfy the minimal pleading burden for discrimination claims at the motion to dismiss stage. See Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996) ("The circumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus."); Conforti v. Sunbelt Rentals, Inc., 201 F. Supp. 3d 278, 298–99 (E.D.N.Y. 2016) (comments by decisionmakers weeks prior to termination suggesting they were biased against female employees sufficient to give rise to an inference of gender discrimination). This is a case where plaintiff has alleged direct evidence of discriminatory intent. No comparators are needed.

### C. Validity of Plaintiff's Legal Theory

A plaintiff who claims sex discrimination in public employment in violation of the Fourteenth Amendment's Equal Protection Clause may bring suit pursuant to 42 U.S.C. § 1983. Naumovski v. Norris, 934 F.3d 200, 212 (2d Cir. 2019). The basic pleading elements of such claims, whether brought under Title VII or § 1983, are similar: a plaintiff claiming disparate treatment under either statute must plausibly allege that she suffered an "adverse employment action" taken "because of her sex." Id. [2] A §1983 claim can be brought only against an

---

[2] Although § 1983 discrimination claims parallel Title VII discrimination claims in some respects, the statues also differ in several crucial ways. See Naumovski, 934 F.3d at 212-213 (discussing four distinctions between the statutes). Another important distinction is that the doctrine of qualified immunity cannot defeat plaintiff's Title VII claim. See Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 255 (2d Cir. 2014).

4

individual who is personally responsible for the discrimination and thus the statute does not permit vicarious liability. See Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015).

Here, accepting plaintiff's allegations as true, she was fired despite her denial that she had sent the photo to any student and the lack of evidence suggesting she had ever disseminated it to anyone else but the male teacher who she was dating at the time. Before the revelation of the image, there was no reason for defendants to terminate plaintiff's employment.

This raises the question: can a school district treat a female teacher's breasts differently than a male teacher's, at least in a school setting? A law that distinguishes employees on the basis of sex is compatible with the Equal Protection Clause if the classification serves important governmental objectives and the "discriminatory means are substantially related to the achievement of those objectives." United States v. Virginia, 518 U.S. 515, 533 (1996). It is axiomatic, however, that many gender-based classifications will not pass constitutional muster. See Reed v. Reed, 404 U.S. 71, 76 (1971) (law giving mandatory preference to males over females, merely to accomplish the elimination of hearings on the merits, was "the very kind of arbitrary legislative choice forbidden" by the Equal Protection Clause); see also U.S. v. Virginia, 518 U.S. at 533 ("The justification must be genuine, not hypothesized or invented post hoc in response to litigation.").

In Tagami v. City of Chicago, 875 F.3d 375, 379 (7th Cir. 2017), as amended (Dec. 11, 2017), the Seventh Circuit held that dismissal at the pleading stage was appropriate in a challenge to a public indecency ordinance. The Court of Appeals relied upon Barnes v. Glen Theatre, Inc., 501 U.S. 560, 568 (1991), which had upheld a similar public-nudity ban based on the law's history and tradition:

> [T]he statute's purpose of protecting societal order and morality is clear from its
> text and history. Public indecency statutes of this sort are of ancient origin and

5

> presently exist in at least 47 States. Public indecency, including nudity, was a criminal offense at common law.... Public nudity was considered an act malum in se. Public indecency statutes ... reflect moral disapproval of people appearing in the nude among strangers in public places….
>
> This and other public indecency statutes were designed to protect morals and public order. The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals, and we have upheld such a basis for legislation.

Id. (citation omitted). The interest at stake in Barnes was the "societal disapproval of nudity in public places and among strangers," id. at 572, so the prohibition "[was] not a means to some greater end, but an end in itself… ." Id.

This shows that disparate treatment between the breasts of a man and a woman may survive equal protection challenges. The Second Circuit affirmed such a distinction when it sustained an adult entertainment zoning amendment that applied to topless female dancers, but not male topless dancers. See Buzzetti v. City of New York, 140 F.3d 134, 141 (2d Cir. 1998). The Buzzetti Court held that the amendment was substantially related to the city's legitimate objective because, although topless bars that employed female entertainers tended to produce negative secondary impacts, "such as a reduction in value of nearby properties and an impairment in the character of the surrounding community[,]" there was no evidence that male topless clubs generated the same type of adverse community impact. Id. at 142; see also Free the Nipple – Springfield Residents Promoting Equal. v. City of Springfield, Missouri, 923 F.3d 508, 512 (8th Cir. 2019) (sustaining city ordinance prohibiting women, but not men, from exposing their breasts as substantially related to the city's important governmental interests in promoting public decency and preventing the secondary adverse effects of public nudity).

But this is a different case. For the purposes of this motion, I must assume defendants fired plaintiff because they came into possession of a semi-nude selfie that she had taken in the

privacy of her own home and then sent it to a romantic partner.  I must further assume that plaintiff did not intend for the photo to be viewed by anyone else but her former boyfriend – she neither disclosed it to her employer nor any students at the school.

Although laws prohibiting public nudity by females may "reflect moral disapproval of people appearing in the nude among strangers in public," Barnes, 501 U.S. at 572, the same cannot be said about the proliferation of individuals sending intimate images to one another. Plaintiff's act of sending an intimate image of herself to a romantic partner (who was not a minor) was not an act *malum in se*.  In fact, the practice has become so common in our society that over forty-six states, including New York, have enacted legislation to address the related issue of the nonconsensual publication of these images for vengeful purposes ("revenge porn").[3] At this stage, defendants have not established that plaintiff's termination was necessarily consistent with the Equal Protection Clause.

In their motion to dismiss, defendants maintain that plaintiff's termination was substantially related to an important government interest, namely, to "prevent[] the disruption [at] the school caused by students having a naked photo of their teacher."  However, I cannot accept defendants' assertion in the Rule 12(b)(6) context.  The complaint did not allege that any student had obtained or would likely have obtained plaintiff's photo.  Nor does it suggest that there was a purported "disruption" at the school.  I therefore cannot find that the mere existence of plaintiff's picture and defendants' procurement of it made her termination necessary to maintain order at the school.

The complaint reiterates that upon completion of the investigation into the photo's origin, Giani personally commented to plaintiff that she had to be fired because of the photo depicting

---

[3] See Cyber Civil Rights Initiative, 46 States + DC Have Revenge Porn Laws, https://www.cybercivilrights.org/revenge-porn-laws/ (collecting state statutes).

her "female breasts." This was not an isolated or stray derogatory remark about women, but direct evidence specifically tethering plaintiff's termination to her gender. No further justification was ever provided. According to the complaint, Giani never mentioned that the salacious nature of the image, any purported access by or effects on the students, or any non-gender reason played any role in his decision to pursue her termination. Plaintiff has therefore pled enough facts to plausibly claim her termination was because of her gender and that Giani personally participated in the alleged constitutional deprivation.

In a § 1983 action, however, an individual cannot be held liable for damages for constitutional violations "merely because he held a high position of authority," Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Although the complaint includes Giani's comment, it does not allege any facts as to the remaining individual defendants' personal involvement in plaintiff's termination. Plaintiff, instead, relies on "group pleading." Her failure to differentiate as to which defendant was involved in the alleged unlawful conduct besides Giani is insufficient to state a claim against the other individual defendants. See Breton v. City of New York, 404 F. Supp. 3d 799, 812 (S.D.N.Y. 2019); Ying Li v. City of New York, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017).

### D. Qualified Immunity

In their reply memorandum, defendants for the first time claimed qualified immunity for the individual defendants, pointing to the absence of controlling authority prohibiting the conduct of which plaintiff complains. It is well-established that "[a]rguments may not be raised for the first time in a reply brief." Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993); see also

8

Zirogiannis v. Seterus, Inc., 221 F. Supp. 3d 292, 298–299 (E.D.N.Y. 2016), aff'd, 707 F. App'x 724 (2d Cir. 2017). I therefore decline to consider it in connection as part of the present motion.[4]

### E. Duplicative Claims

In her second cause of action, plaintiff brings a claim under § 1983, alleging a violation of her "civil rights," but she fails to specify "the source of the right alleged to have been denied." Saulpaugh v. Monroe Comm. Hosp., 4 F.3d 134, 143 (2d Cir. 1993). Section 1983 "creates no substantive right; it merely provides remedies for deprivations of rights established elsewhere." City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985); see also Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). Thus, plaintiff's stand-alone § 1983 claim must be dismissed. See Abujayyab v. City of New York, No. 15-cv-10080, 2018 WL 3978122, at *4 (S.D.N.Y. Aug. 20, 2018); Byvalets v. New York City Hous. Auth., No. 16-cv-6785, 2017 WL 7793638, at *5 (E.D.N.Y. July 28, 2017). To the extent plaintiff's second claim was meant be read in conjunction with her third cause of action, in which she alleges a denial of equal protection under the Fourteenth Amendment, the stand-alone § 1983 claim is duplicative. See id.; Davidson v. LaGrange Fire Dist., No. 08-cv-3036, 2012 WL 2866248, at *21 (S.D.N.Y. June 19, 2012).

Accordingly, the motion to dismiss the second claim is granted, but the third claim, alleging an equal protection violation based on a theory of gender discrimination in public employment brought pursuant to § 1983, may proceed against Giani.

### F. Class-of-One Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment, although "most familiar as a guard against state and local government discrimination on the basis of race, national origin, sex,

---

[4] Plaintiff should recognize, however, that since neither side has cited any Supreme Court or Second Circuit case dealing with facts similar to those alleged in the complaint, qualified immunity may well apply at the summary judgment stage. See Naumovski, 934 F.3d at 211 ("When analyzing whether the right violated was 'clearly established,' the Supreme Court has repeatedly (and recently) reminded us that clearly established law must be 'particularized' to the facts of the case and must not be defined 'at a high level of generality.'").

and other class-based distinctions … also … protect[s] individuals against purely arbitrary government classifications." Geinosky v. City of Chicago, 675 F.3d 743, 747 (7th Cir. 2012). This latter theory is known as a "class-of-one" theory. See Appel v. Spiridon, 531 F.3d 138, 141 (2d Cir. 2008).

The Supreme Court has held that "the class-of-one theory of equal protection has no application in the public employment context." Engquist v. Oregon Dep't of Agric., 553 U.S. 591 (2008). Applying Engquist, courts consistently find that public employees alleging a deprivation of equal protection based on such a theory fail to state a claim. See, e.g., O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester, No. 18-cv-8502, 2020 WL 1244474, at *7 (S.D.N.Y. March 16, 2020); Thomas v. Town of Se., 336 F. Supp. 3d 317, 331–32 (S.D.N.Y. 2018); O'Leary v. Town of Huntington, No. 11-cv-3754, 2012 WL 3842567 at *14 (E.D.N.Y. Sept. 5, 2012). The same result is required here.

### G. Conspiracy

Plaintiff also alleges a conspiracy in which defendants planned to deprive her of her civil rights, in violation of 42 U.S.C. § 1985(3). However, under the intra-corporate conspiracy doctrine, which the Second Circuit has applied in § 1985(3) cases, "there is no conspiracy if the conspiratorial conduct challenged is essentially a 'single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment.'" Ying Li, 246 F. Supp. 3d at 621 (quoting Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978)).

Plaintiff attempts to salvage this claim by arguing that the conspiracy implicated trustees of the school district's Board of Education. Plaintiff contends the trustees were not "employees" and thus not "beholden to the employers in any way." But the trustees' employment status is

10

immaterial. As the school district's agents, they were acting within the scope of their official capacity as officers and directors of the corporate entity throughout the process. The Second Circuit has squarely addressed this issue, holding that an educational institution's trustees are covered by the intra-corporate conspiracy doctrine. See Herrmann, 576 F.2d at 459; see also Stepien v. Schaubert, No. 08-cv-478A, 2010 WL 1875763, at *6 (W.D.N.Y. Feb. 23, 2010), report and recommendation adopted, No. 08-cv-487, 2010 WL 1875769 (W.D.N.Y. May 11, 2010), aff'd, 424 F. App'x 46 (2d Cir. 2011).

There is no allegation that defendants were motivated by an "independent personal stake in achieving" plaintiff's termination, rather than "merely carrying out the corporation's managerial policy." Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 71 (2d Cir. 1976) (internal quotation marks and citations omitted). Because the trustees were legally incapable of conspiring with the other defendants, the § 1985 claim is dismissed.

### H. Attorneys' Fees

The federal civil rights attorneys' fee statute provides a mechanism by which a prevailing party may seek particular remedies in an action. See 42 U.S.C. § 1988. However, the statute does not create an independent claim for relief. See Weiss v. Violet Realty, Inc., 160 F. App'x 119, 120 (2d Cir. 2005). Plaintiff's seventh cause of action is therefore dismissed, without prejudice to plaintiff's right to seek attorneys' fees should she prevail in this action.

## II. Claims against the School District

### A. Exhaustion as to Title VII

As an initial matter, defendants seek dismissal of the Title VII claim because the complaint does not indicate whether plaintiff received a right-to-sue letter from the Equal

11

Employment Opportunity Commission ("EEOC"). But that is not the only way to exhaust one's administrative remedies. Where, as here, a plaintiff does not receive a right-to-sue letter from the EEOC, obtaining such a letter from the New York state equivalent agency, the New York State Division of Human Rights, satisfies Title VII's exhaustion requirement. See Williams v. New York City Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006); Rivera v. Children's & Women's Physicians of Westchester, LLP, No. 16-cv-714, 2017 WL 1065490, at *7 (S.D.N.Y. March 18, 2017). Plaintiff has submitted her letter from NYSDHR in opposition to the motion. That is sufficient to demonstrate exhaustion. See John v. City of Bridgeport, 309 F.R.D. 149, 153 (D. Conn. 2015).

### B. Viability of Title VII/Title IX Claims

For a complaint asserting a Title VII discrimination claim, "[t]he Iqbal plausibility standard applies in conjunction with employment discrimination pleading standards." Jackson v. NYS Dep't of Labor, 709 F. Supp. 2d 218, 223–24 (S.D.N.Y. 2010) (citation omitted). Such complaints "need not allege 'specific facts establishing a *prima facie* case of discrimination' . . . to survive a motion to dismiss." Boykin v. KeyCorp, 521 F.3d 202, 212 (2d Cir. 2008) (quoting Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 (2002)). Rather, these complaints need only "include a short and plain statement of the claim … [which] 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Swierkiewicz, 534 U.S. at 512 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Likewise, to plead a claim of discrimination under Title IX, a plaintiff need only "plead[] specific facts that support a minimal plausible inference of … discrimination [on account of gender]." Wiley v. Plattsburgh, 407 F. Supp. 3d 119, 130 (N.D.N.Y. 2019) (quoting Doe v. Columbia Univ., 831 F.3d 46, 56 (2d Cir. 2016)).

For the same reasons that the § 1983 claim survives against Giani, the Title VII and Title IX claims survive against the school district. The complaint alleges that Giani, a decisionmaker who effectuated plaintiff's termination, commented that plaintiff had to be fired because of her photo. This comment evinced a discriminatory gender-based animus because he specifically attributed the need for plaintiff's termination to the photo depicting plaintiff's "female breasts," not due to any gender-neutral factor. His remark makes it plausible that plaintiff's termination was sought because of her gender.

### C. School District's Liability Under Monell

To bring a § 1983 lawsuit for municipal liability, "a plaintiff must prove that action pursuant to official municipal policy caused the alleged constitutional injury." Cash v. Cty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks omitted). This requirement flows from the principle that, "under § 1983, local governments are responsible for only their own illegal acts." Connick v. Thompson, 563 U.S. 51, 60 (2011).

The school district's liability for the Superintendent's actions depends, among other things, on whether he acted pursuant to official municipal policy in terminating plaintiff's employment. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). A school district's liability under Monell may be premised on the employee having acted as a "final policymaker." Hurdle v. Bd. of Educ. of City of New York, 113 F. App'x 423, 424–25 (2d Cir. 2004).

Plaintiff's claim in her complaint is that Giani was a final policymaker as the district's Superintendent. Under this theory, an official need not be a municipal policymaker for all purposes:

> Rather, with respect to the conduct challenged, he must be responsible under state law for making policy *in that area* of the municipality's business ... or must have the power to make official policy *on a particular issue* ... or must possess final authority to establish municipal policy *with respect to the action ordered*.

13

Hurdle, 113 F. App'x at 424–25 (emphasis in original).

There was no indication whether Giani's decision to fire plaintiff was merely a recommendation or that he needed to obtain the school board's approval before terminating a probationary teacher. These allegations are sufficient at this stage to state a Monell claim against the school district under the third cause of action. See Nagle v. Marron, 663 F.3d 100, 116–117 (2d Cir. 2011); Joinnides Dodson v. Bd. of Educ. of the Valley Stream Union Free Sch. Dist., 44 F. Supp. 3d 240, 247 (E.D.N.Y. 2014).

### III. NYSHRL Claims

#### A. Notice of Claims

Defendants contend that plaintiff's Notice of Claim was inadequate under state law because it did not specifically reference N.Y. Exec. Law. § 290 *et seq*. The argument fails.

Section 3813(1) of New York State Education Law provides that no action may be maintained against a school district unless notice of the claim was served upon it within three months of the date on which the claim accrued. Marino v. Chester Union Free Sch. Dist., 859 F. Supp. 2d 566, 570 (S.D.N.Y. 2012). Any notice of claim under § 3813 must satisfy the requirements of General Municipal Law § 50-e. Id. When determining whether there has been compliance with the General Municipal Law's notice requirement, "courts should focus on whether the notice of claim included information sufficient to enable the municipal defendant to investigate the claim and whether, based on the claimant's description, municipal authorities could locate the place, fix the time, and understand the nature of the accident." Hudson v. New York City Transit Auth., 19 A.D.3d 648, 649, 798 N.Y.S.2d 105 (2005). The purpose of such notice is to allow the municipality to investigate complaints adequately. Marino, 859 F. Supp.

14

2d at 570.  Any claim for relief or theory of liability not directly or indirectly mentioned in the notice of claim against the municipality may not be included in subsequent lawsuits.  See Fincher v. Cty. of Westchester, 979 F. Supp. 989, 998 (S.D.N.Y. 1997).

However, the Second Circuit has noted that the requirement of § 50-e need not be "stated with literal nicety or exactness," and the question is simply whether the notice includes "information sufficient to enable the city to investigate."  Parise v. New York City Dep't of Sanitation, 306 F. App'x 695, 697 (2d Cir. 2009).  In addition, N.Y. Gen. Mun. Law 50-e(6) provides a safe harbor in which a court may permit a mistake or irregularity made in good faith in a notice to be corrected or even disregarded if the other party was not prejudiced.  Id.

Here, plaintiff's notice contained abundant information from which defendants could adequately investigate and understand plaintiff's legal theory of gender discrimination.  Defendants cannot feign surprise or prejudice when the notice stated: (1) that defendants "unlawfully discriminated against Claimant based upon [her] female sex/gender, in violation of law, both federal law and *New York state law*" (emphasis added); (2) that defendants "terminat[ed] Claimant's employment based on her gender"; and (3) that the "true reason for the adverse employment action was unlawful discrimination based upon Claimant's sex/gender."  The notice also provided the date and location of when and where the claim arose; ample factual description of the allegations; and defendants' names.  See Hudson, 19 A.D.3d at 649, 798 N.Y.S.2d at 107.

There is no requirement within § 3813 that a claimant must cite the specific statute under which she seeks redress. Defendants' motion to dismiss the NYSHRL claim is therefore denied.[5]

B. **Viability of Claims**

Discrimination claims under Title VII and NYSHRL are analyzed under the same standards. See Vega v. Hempstead Union Free Sch. Dis., 801 F.3d 72, 88 (2d Cir. 2015). For the same reasons the Court finds that plaintiff has pled a *prima facie* case of Title VII discrimination against the school district, the Court denies the motion to dismiss plaintiff's claims of discrimination under NYSHRL as to the school district.

Unlike Title VII and Title IX, however, NYSHRL permits individual liability, which is actionable under two theories: (1) if the individual has an "ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others" (i.e., the power to hire or fire), Townsend v. Benjamin Enterprises, Inc., 679 F.3d 41, 57 (2d Cir. 2012); or (2) if the defendant aided and abetted the unlawful discriminatory acts of others. N.Y. Exec. Law § 296(6); see also Gorman v. Covidien, LLC, 146 F. Supp. 3d 509, 521–22 (S.D.N.Y. 2015). "[A]n individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 n.10 (2d Cir. 2011).

Where a complaint lumps defendants together in each claim and provides no factual basis to distinguish their conduct, it fails to satisfy the minimum pleading standard. See Atuahene v.

---

[5] The cases defendants cite do not require a different result. In Jewell v. City of New York, No. 94-cv-5454, 1995 WL 86432 (S.D.N.Y. March 1, 1995), although the notice alleged "negligence," it contained no facts suggesting that this referred to the City's hiring practices, rather than the tortious acts of the traffic agent and police officer. Santiago v. Newburgh Enlarged City Sch. Dist., 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006), merely noted the requirement of filing a notice of claim.

City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001).  The complaint contains no factual allegations to distinguish the individual defendants' conduct, except Giani, as to their authority to hire and fire employees or how they aided and abetted the alleged unlawful discrimination. The remaining individual defendants' motion to dismiss the NYSHRL claim is granted.

## CONCLUSION

Defendants' [21] motion to dismiss is granted in part and denied in part.  Counts I and V may proceed against the school district only; plaintiff's gender discrimination allegations arising under Counts III and IV may proceed against the school district and Giani; and Counts II, VI and VII are dismissed.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
       May 20, 2020